MUSSER-SAUNTRY LAND, LOGGING & MANUF'G CO. *vs.* DAVID TOZER.

Argued Jan. 16, 1894.   Reversed Feb. 6, 1894.

Nos. 8514, 8515.

**Adverse possession under Wisconsin tax laws.**

> Camping in a tent on vacant and unoccupied land, and cooking, preparing food, and sleeping on it for a few days, or a week, and watching it for several weeks for the purpose of keeping off trespassers and asserting title to the land, but doing and intending to do nothing else to improve the land or subject it to any proper use, is not sufficient adverse possession to interrupt the running, in favor of a tax deed, of the statute of limitations provided by Wis. R. S. § 1188.

Appeal by defendant, David Tozer, from an order of the District Court of Washington County, *W. C. Williston*, J., made September 5, 1893, denying his motion for a new trial.

Appeal also by the plaintiff, Musser-Sauntry Land, Logging and Manufacturing Company, a corporation, from an order of said court made in the same case on the same day denying its motion for a new trial.

On May 20, 1889, plaintiff owned two hundred and eighty acres of unoccupied land in section ten (10) T. 42, R. 15, in Burnett County, Wisconsin. On that day this land was conveyed by the county clerk of that county in seven different tracts of forty acres each to E. F. Drake for $102.38 unpaid taxes thereon. The deed was duly recorded the same day. On September 10, 1890, Drake sold and conveyed to T. H. Thompson, the pine timber on the land with the privilege of cutting and removing it within two years thereafter. Andrew Clendenning under agreement with Thompson entered upon the land in December, 1890, and cut thereon 421,539 feet board measure of white pine sawlogs. On January 6, 1891, the plaintiff notified him that it owned the land and timber and forbid his cutting any more of the timber or removing any already cut. He removed, however, the logs he had cut, took them down the St. Croix river to Stillwater and sold them to the defendant, David Tozer. Plaintiff notified Tozer that it owned the logs and demanded possession of them but he refused, and thereafter sold them and converted the proceeds to his own use. While standing on the land the timber was worth $1.65 per thousand feet, but when cut and driven to Stillwater the logs were worth there $8 per thousand feet. On April 19, 1892, the plaintiff sent its servants upon the land who camped and stayed there as described in the opinion of the court.

This action was commenced October 14, 1892, to recover of defendant $3,372.31, the value of the logs at Stillwater, with interest thereon from the date of the conversion. A jury was waived. Findings were made and judgment ordered for the plaintiff for the value while standing timber on the land, $695.54 and interest. The defendant moved for a new trial on the ground that under the Wisconsin Rev. Stat. §§ 1187, 1188, introduced in evidence, the plaintiff had lost title to the land. The plaintiff moved at the same time for a new trial also, on the ground that its damages should have been assessed at the value of the logs at Stillwater. Both motions were denied and both parties appealed.

*Clapp & Macartney,* for plaintiff.

The statute of Wisconsin makes the tax deed *prima facie* evidence of title, but up to the time that the statute of limitations has run, a deed will be set aside if any irregularity is shown.    After the statute has run the situation is different.    *Bronson* v. *St. Croix Lumber Co.,* 44 Minn. 348; *Hilgers* v. *Quinney,* 51 Wis. 62; *Potts* v. *Cooley,* 51 Wis. 353; *Ramsay* v. *Hommel,* 68 Wis. 12; *Pier* v. *Prouty,* 67 Wis. 218; *Urquhart* v. *Wescott,* 65 Wis. 135; *Morris* v. *Carmichael,* 68 Wis. 133; *Wisconsin Cent. R. Co.* v. *Wisconsin River L. Co.,* 71 Wis. 94; *Morrow* v. *Lander,* 77 Wis. 77; *Dupen* v. *Wetherby,* 79 Wis. 203.

The statute operates in favor of the possessor of the land to bar the title of whichever party was, during the three years next after the recording of the tax deed, out of actual possession.    *Falkner* v. *Dorman,* 7 Wis. 388; *Knox* v. *Cleveland,* 13 Wis. 245; *Parish* v. *Eager,* 15 Wis. 532; *Swain* v. *Comstock,* 18 Wis. 463; *Jones* v. *Collins,* 16 Wis. 594.

As to what constitutes a sufficient possession on the part of the original owner to bar the tax deed, we call the court's attention to *Haseltine* v. *Mosher,* 51 Wis. 443; *Smith* v. *Sherry,* 54 Wis. 114; *Stephenson* v. *Wilson,* 50 Wis. 95; *Finn* v. *Wisconsin River L. Co.,* 72 Wis. 456.

The possession taken by plaintiff's servants constitutes a sufficient possession to prevent the running of the statute of limitations in favor of the tax deed, and to set the statute running in favor of the former owner, for the express reason that the title which is to be defeated by such possession is a tax title.    It does not require any such possession to enable the former owner to plead the statute as a bar in his favor against the tax title, as it would to enable a claimant setting up possession as a bar to the patent title from the United States, to recover.

*Baker & Helms* and *F. B. Dorothy,* for defendant.

The taxes on these lands for the year 1885, were returned delinquent and in May, 1886, the lands were sold for the taxes and charges. Certificates were issued and plaintiff allowed the three years to ex-

pire without redeeming.    On May 20, 1889, a tax deed was issued to
the holder of the tax certificates and duly recorded.    For three
years subsequent to the recording of the deed plaintiff had the right
to set aside the deed for any irregularities or defects.    But it
brought no suit to do so.    A year and a half after recording the deed,
the parties holding under it, who had bought the timber, cut it into
sawlogs.    After the timber was cut, plaintiff served a notice upon
them that it owned the land and forbid their cutting the timber or
removing that already cut.

Wis. Rev. Stat. §§ 1190, 4212, are as follows:

§ 1190.    What shall constitute a possession of lands within the
meaning of the preceding sections and the extent of such possessions,
shall be governed by the rules prescribed for determining an adverse
possession by a person claiming title founded upon a written instru-
ment.

§ 4212.    For the purpose of constituting an adverse possession by
any person claiming a title founded upon some written instrument or
some judgment, land shall be deemed to have been possessed and
occupied in the following cases:    1. Where it has been usually culti-
vated or improved.    2. Where it has been protected by a substan-
tial enclosure.    3. Where, although not enclosed, it has been used
for the supply of fuel or of fencing timber, for the purpose of hus-
bandry, or for the ordinary use of the occupant.

The design of this statute was to supply certain conditions of
actual adverse possession, not to exclude others.    They are enumer-
ated because they are conditions all of which would probably fall
short of constituting actual adverse possession at common law.
Whatever would constitute actual adverse possession under paper
title outside of the statute, still constitutes it notwithstanding the
statutory definition of other conditions of such possession.    *Wilson*
v. *Henry*, 40 Wis. 594.

The camping of plaintiff's servants on the land in April, 1892, was
not an adverse possession within the meaning of these statutes or
under the common law.    *Davis* v. *Spring Valley Water Works*, 57
Cal. 543;  *Pepper* v. *O'Dowd*, 39 Wis. 538;  *Furlong* v. *Garrett*, 44
Wis. 111;  *Unger* v. *Mooney*, 63 Cal. 586;  *Leeper* v. *Baker*, 68 Mo.
400;  *Washburn* v. *Cutter*, 17 Minn. 361;  *Denham* v. *Holeman*, 26
Ga. 182.

The late case of *St. Croix Land and Lumber Co.* v. *Ritchie,* 78 Wis. 492, is directly in point and settles the law in that state upon the subject.

CANTY, J.    This is an action brought by the plaintiff against the defendant for the conversion of logs cut on land claimed to be owned by plaintiff, and which were owned by it unless its title had been divested by reason of a tax deed under which defendant claims.

The effect of this tax deed is the principal question in the case. Since and before the date of the execution of such deed there has been in force in that state a statute of limitation in favor of such tax deeds, which reads as follows:

Wis. R. S. "§ 1188.    No action shall be maintained by the former owner or any person claiming under him, to recover the possession of any land or interest therein which shall have been conveyed by deed for the non-payment of taxes or to avoid such deed against any person claiming under such deed, unless such action shall be brought within three years next after the recording of such deed. Whenever any such action shall be commenced upon any tax deed heretofore or hereafter issued, after the expiration of three years from the date of the recording of such deed,  *  *  *  as aforesaid, such deed, if executed substantially in the form prescribed by law for the execution of tax deeds shall be conclusive evidence of the existence and legality of all proceedings, from and including the assessment of the property for taxation, up to and including the execution of such deed."

There has also at the same time been in force against the operation of such tax deeds a statute of limitations, which reads as follows:    Wis. R. S. "§ 1187.    No action shall be maintained by the grantee or any one claiming under him to recover the possession of any land or any interest therein, which shall have been conveyed by deed for the non-payment of taxes, unless such action shall be brought within three years next after the date of the execution of such deed; or, if such land demanded shall be, when so conveyed, vacant and unoccupied, and so remain, unless such action be brought within three years next after the date of the recording of such deed, or unless such grantee or those claiming under him shall have been in actual, not constructive possession of the land so demanded for

three successive years during the five years next after the recording of such deed; provided, however, that if the former owner takes possession of any such land at any time within three months of the expiration of three years from the date of the execution of such deed, then and in such case the grantee in such tax deed, or those claiming under him, may bring and maintain an action to recover possession of said land at any time within three months next, after the expiration of said three years."

The Supreme Court of that state holds that when land of which a tax deed has been made is vacant and unoccupied, the holder of such tax deed has the constructive possession, in favor of which, as well as of his actual possession, the limitation provided in said section 1188 will run; but that such constructive possession may be interrupted by the former owner entering and taking possession, in favor of which possession the limitation provided in section 1187 will then run.

Thus it will be seen that stopping the running of one limitation starts the running of the other.

Said tax deed is dated May 20, 1889, and it is recited in it that the land in question was sold to Burnett county on the 18th day of May, 1886; that it had not been redeemed, and was forfeited; that one E. F. Drake had purchased it, and it purported to convey the land to him. This deed was recorded the same day, and no question is made but that it is in the form prescribed by the laws of that state.

One Clendenning, under authority from Drake, cut the logs in the winter of 1890–91, and they afterwards passed from him into the possession of defendant, who sold them. During all of this time the land was vacant and unoccupied, except such occupation as Clendenning had while cutting and hauling the logs, and the limitation provided by section 1188 was running in favor of the tax deed; and, whether this deed was originally void or not, it would, under the decisions of that court, have ripened into a perfect title on the 20th of May, 1892.

But on the 19th of April, 1892, the plaintiff caused three of its employes to go upon the land to protect the land from trespass, and to sleep on each forty, and travel over the seven forties once a day. The three men did as ordered, pitched their tent on one forty, and

camped, slept, cooked, and prepared their food there a week, camped on the next forty two or three days, on the next one five days, on the next two days, on the next three days, on the next one day, and, after one more removal, camped on one forty until the 9th of June, 1892. This was done for the purpose of asserting title. Plaintiff's witnesses testified, as to the character of the occupancy: "We did not go there for the purpose of improving the lands, nor fencing them, nor putting any buildings on the lands at all; simply went to obey orders; simply went on there to stay a while, and then came off."

The court below held that this was sufficient to constitute adverse possession under these statutes and the decisions of the Supreme Court of Wisconsin.

We are not of that opinion. We have examined those decisions, and do not think they warrant that conclusion. It is true that there are such decisions holding that logging all winter for a couple of winters on the land, and cutting off all or most of the available timber on it, may constitute such possession. But in the late case of *St. Croix Land and Lumber Co.* v. *Ritchie,* 78 Wis. 492, (47 N. W. 657,) they also hold that cutting some trees on each forty for the purpose of erecting a dam on other land, or the mowing an acre or two of marsh land, or the foraging of cattle running at large on it, would not be sufficient to interrupt the running of the limitation, and bar the tax-title claim.

That, if the former owner "actually and exclusively occupies the land in hostility to the defendant's title, and subjects the same to their will and dominion by actual and appropriate use according to their locality, quality, and character, the evidence of such occupancy being tangible to a person going upon and examining the lands, such occupancy and use would constitute adverse possession."

To what actual or appropriate use was this land subjected, or what tangible evidence thereof was there to a person going upon the land? Would the sight of a tent and a camp fire convey to his mind any idea that it was anything but a hunting or fishing party? But if even this occupancy was intended to be continued unto and followed up by something more permanent, it might be different; but it was not. There never was any intention of doing anything more towards appropriating the land to any proper use than what was done. It

was intended that the possession should be as temporary, casual, and fugitive as it really was.    A mere entry is not sufficient to interrupt the running of this statute of limitation.    It sufficiently appears that the occupancy was temporary, casual, and in bad faith, and for these reasons we are of the opinion that it did not interrupt the running of the statute of limitations in favor of the tax deed; that the same became conclusive under the Wisconsin decisions before this action was commenced, and cannot now be impeached any more in this action than in a direct action to try the title to the land.

For these reasons the order denying defendant's motion for a new trial is reversed, and the appeal of plaintiff is dismissed.

(Opinion published 57 N. W. Rep. 1072.)

Application for reargument denied April 6, 1894.